**Jeffrey L. HEIDEMAN, Plaintiff,**

v.

**Wayne WIRSING, Price County and ABC Insurance Companies, Defendants.**

No. 91–C–370–C.

United States District Court,
W.D. Wisconsin.

June 22, 1992.

As Amended June 23, 1992.

P. Scott Hassett, Madison, WI, for Jeffrey L. Heideman.

John P. Runde, Terwilliger, Wakeen, Piehler, Wausau, WI, for Wayne Wirsing, Price County.

OPINION and ORDER

CRABB, Chief Judge.

Plaintiff and defendants have filed objections to the Report and Recommendation entered herein by the United States Magistrate Judge on May 29, 1992. The magistrate judge recommended granting the defendants' motion for summary judgment with respect to certain claims raised by plaintiff and denying it with respect to others.

Plaintiff's objection is addressed to the magistrate judge's recommendation to grant defendants' motion with respect to plaintiff's claim that he was fired from his job as a deputy sheriff for political activity and expression in violation of the First Amendment. The magistrate judge held that dismissal of this claim was required in light of the opinion of the Court of Appeals for the Seventh Circuit in *Upton v. Thompson*, 930 F.2d 1209 (7th Cir.), *reh'g en banc denied sub nom. Thulen v. Bausman*, 938 F.2d 84 (7th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).

Although I share some of the doubts about the *Upton* holding expressed by Judge Ripple in his dissent to the denial of the motion for rehearing en banc, *Thulen v. Bausman*, 938 F.2d at 85–86, I am bound to follow it. Plaintiff makes a compelling argument that the situation in Price County is different from the situations in the two cases decided in *Upton*, because Price County has adopted a specific policy allowing sheriff's deputies to engage in political campaigns to the extent that their participation does not detract from the performance of their duties. If the court of appeals had limited its holding in *Upton* to those situations in which "the hiring authority can demonstrate that [political considerations are] an appropriate requirement for the effective performance of the public office involved," *Livas v. Petka*, 711 F.2d 798, 800 (7th Cir.1983), I would agree with plaintiff that the question is one of fact, requiring a showing in each particular situation that the hiring authority considers political affiliations or activities an appropriate requirement for the office and that such consideration is appropriate given the demands of the job. However, the court did not limit its holding in this manner. Instead, it rephrased the question to "'whether [political considerations] can be an appropriate requirement for the effective performance' of a deputy sheriff's duties," and added, "In this situation we believe the answer is yes." *Upton*, 930 F.2d at 1218. The court went on to say even more plainly, "Suffice it to say that under the First Amendment as interpreted by *Branti* [*v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) ], *Livas*, and *Tomczak* [*v. City of Chicago*, 765 F.2d 633 (7th Cir.1985) ], a sheriff may use political considerations when determining who will serve as deputy sheriff." *Id.* In the light of this plain statement, and the court's expressed preference for basing civil service protections on "statutes and contracts[, which] are a much more viable method of job protection than reliance on blurry constitutional lines drawn by the courts," *Id.* at 1216 n. 4, I conclude that the magistrate judge was correct when he recommended dismissal of this claim.

With the dismissal of the First Amendment claim, only one federal claim remains: the possible Fourteenth Amendment claim identified by the magistrate judge. Defendant objects to the court's consideration of this claim, which was not raised by plaintiff and which defendant has had no opportunity to address. I agree with the magistrate judge that plaintiff may have a due process claim against defendant Price County, and therefore, I will deny defendants' motion for summary judgment to that extent. However, defendants are free to file a new motion for summary judgment directed to the Fourteenth Amendment claim, if they believe that they have evidence that shows that plaintiff could not prevail on the claim at trial.

The magistrate judge recommended that the court exercise supplemental jurisdiction over defendants Wirsing and Price County on all surviving state law claims. I will continue to do so on the assumption that plaintiff's Fourteenth Amendment claim remains. If, however, defendants move for summary judgment on that claim, and their motion is granted, I will reconsider the merits of retaining jurisdiction over the state law claims.

## ORDER

IT IS ORDERED that the findings of fact and conclusions of law proposed by the Unit-

ed States Magistrate Judge are adopted as the court's own; FURTHER, IT IS ORDERED that

1. The motion of defendant Wayne Wirsing to dismiss all federal claims against him on the ground that plaintiff failed to sue him in his individual capacity is DENIED;

2. Defendants' motion for summary judgment on plaintiff's § 1983 claim based on the First Amendment is GRANTED;

3. Defendants' motion for summary judgment on plaintiff's § 1983 claim based on the Fourteenth Amendment is GRANTED with respect to defendant Wayne Wirsing and DENIED with respect to defendant Price County;

4. Defendants' motion to dismiss plaintiff's § 1985 claim is GRANTED;

5. Defendants' motion to dismiss plaintiff's claim for punitive damages against Price County is GRANTED;

6. Defendants' motion to dismiss plaintiff's state law claims under Wis.Stat. §§ 134.01 and 134.02 is GRANTED as to both defendants Wayne Wirsing and Price County;

7. Defendants' motion to dismiss plaintiff's state law breach of contract claim is DENIED; and

8. The court will exercise supplemental jurisdiction over both defendants on all surviving state law claims. This final determination is subject to reconsideration if defendants move successfully for summary judgment on plaintiff's § 1983 claim based on the Fourteenth Amendment.[1]

## REPORT AND RECOMMENDATION

### May 29, 1992.

CROCKER, United States Magistrate Judge.

### INTRODUCTION

In this civil action brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), plaintiff, Jeffrey Heideman, a former deputy sheriff of Price County, alleges that he was fired in violation of his First Amendment right to express his political views. Now before the court are defendant Sheriff Wayne Wirsing's and defendant Price County's motion for summary judgment on the § 1983 claim, and their motions to dismiss the § 1985(3) claim as well as certain state-based causes of action. Defendants have asked this court not to exercise pendent jurisdiction over any surviving state law claims if this court dismisses Heideman's federal claims.

■ There are legal issues involved in this case that neither side has addressed. This court is not obliged to review the record for facts nor raise issues that may not have occurred to the parties.[1] Given the outcome I reach, the defendants undoubtedly would prefer that I not do so. Nevertheless, it seems short-sighted to pretend that these issues do not exist. If the court does not deal with them now, it may have to do so later. On the assumption that earlier is better than later, I am raising any issue that appears to need analysis and offering my recommendation on how this court ought to proceed. In taking this approach, I recognize that I will be raising issues and recommending disposition of them *sua sponte*. Nonetheless, I believe it is best to address everything and let the parties have their input during the ten-day period for objections that follows this Report and Recommendation.

As discussed more fully below, these are my findings and recommendations:

1. Heideman's complaint adequately names Wirsing as a defendant in both his personal and official capacity. This ends up having little significance, however, because I am recommending dismissal of all of the federal claims against him.

2. Heideman has no First Amendment claim against either defendant because the

---

1. The magistrate judge did not rule on defendants' motion to strike certain affidavits submitted by plaintiff in opposition to the defendants' motion. Since the affidavits related only to plaintiff's § 1985 claim, as to which defendants' motion for summary judgment is granted in this order, I consider the motion to strike moot.

1. *See, e.g., United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991).

Court of Appeals for the Seventh Circuit has ruled that deputy sheriffs may be fired for political activity, if other rules do not protect political speech.

3. Although not clearly articulated, there is a Fourteenth Amendment Due Process claim against Price County lurking in Heideman's § 1983 claim. By virtue of possible contract rights, Heideman may have had a right not to be fired for political activity, even as a probationary employee; therefore, he may have been entitled to more process than he received. There are enough disputed facts in the record for this claim at least to survive summary judgment. This claim does not lie against Wirsing, however, because Wirsing did not have the power as sheriff or individually to fire Heideman or to give him the process he may have been due.

4. Heideman's § 1983 claim could also be stating a Due Process claim against the defendants for depriving Heideman of his property interest in his job with the City of Phillips Police Department. However, this claim does not survive summary judgment because neither the facts of record nor the law support it. Defendants did not actually deprive plaintiff of a property interest in his position with the Phillips City Police Department, and there is an adequate state remedy to compensate plaintiff for any damages caused by defendants' alleged interference with that property interest.

5. Heideman's § 1985 claim must be dismissed for failure to allege an actionable conspiracy.

6. Heideman's claim for punitive damages on the federal civil rights claims becomes irrelevant because Wirsing is out of the federal claims and Price County, as a municipality, is not liable for punitive damages. Punitive damages remain a possibility in the state law intentional tort claims.

7. The state law claims against Price County of breach of contract, defamation, tortious interference with contractual relations, and violation of plaintiff's right to free speech under the Wisconsin Constitution survive, and the state law claims alleging violations of Wis.Stat. §§ 134.01 and 134.02 do not. Since the remaining state claims are based on the same facts underlying the surviving federal law claims against the County, it is appropriate for this court to exercise supplemental jurisdiction over these claims.

8. There are no surviving federal claims against Wirsing. The state law claims of defamation, violation of plaintiff's right to free speech under the Wisconsin Constitution, and tortious interference with contractual relations survive against Wirsing, and the state claims arising under Wis.Stat. §§ 134.01 and 134.02 do not. The remaining state law claims against Wirsing are so intertwined with the federal and state claims that survive against Price County, that under the new, liberalized supplemental jurisdiction statute, it is appropriate for this court to exercise supplemental jurisdiction over Wirsing on the state law claims.

From the parties' proposed findings of fact, along with my review of the affidavits and exhibits, and for the purpose only of this report and recommendation, I find there is no genuine dispute as to the following material facts:

### FINDINGS OF FACT

Jeffrey L. Heideman was employed as a Deputy Sheriff in the Price County Sheriff's Department from January 8, 1990 until he was terminated on approximately November 12, 1990. He was on probationary status at the time of his termination. Plaintiff was also employed by the City of Phillips Police Department on a part-time basis at the time he was discharged from the Sheriff's Department.

Defendant Wayne Wirsing was the Sheriff of Price County, Wisconsin, and was Heideman's supervisor. Wirsing was a member of the Price County Law Enforcement Committee.

As part of his employment as a deputy sheriff, Heideman had had a six-month evaluation of his performance by Wirsing and the Price County Law Enforcement Committee. They gave Heideman a satisfactory performance review.

Heideman was also supervised by Chief Deputy Timothy Gould. Deputy Gould's duties included reviewing the performance of

officers in the Sheriff's Department. Gould did not place any memos critical of Heideman's performance in his personnel file nor did he present any negative reports to either the Law Enforcement Committee or the Price County Personnel Committee prior to November 9, 1990.

On November 6, 1990, while off-duty, Heideman visited Meister's Bar, a tavern in Phillips, where he ended up in a heated argument with the bartender. It was an election year, and the bartender supported Wirsing, while Heideman supported Wirsing's challenger. During the argument, Heideman exchanged obscenities with the bartender and asked him to "step outside." Heideman admits he was impaired by the consumption of alcohol at the time of the argument.

After investigating the incident, the City of Phillips Chief of Police, Craig Moore, who is not a defendant in this case, issued Heideman a citation for disorderly conduct and placed a letter of reprimand in Heideman's Police Department personnel file.

On November 7, 1990, Wirsing informed Heideman that, pending an investigation of the occurrence at the bar, he was suspended with pay. On November 9, 1990, Chief Deputy Gould presented to the Price County Law Enforcement Committee a version of the incident at Meister's Bar and informed it of Heideman's subsequent citation. Heideman contests the accuracy of Gould's report. Gould is not a defendant in this case. Wirsing, as a member of the Law Enforcement Committee, was present during this presentation. He did not vote on the motion to recommend to the Price County Personnel Committee that it fire Heideman. The motion passed.

On November 8, 1990, Price County retained a private investigator to investigate the tavern incident. The PI issued a report to the County's corporation counsel on November 10, 1990.

Thereafter, on November 12, 1990, the Personnel Committee accepted the recommendation of the Law Enforcement Committee and terminated Heideman effective November 13, 1990. Heideman was not inter-

viewed by either the Law Enforcement Committee or the Personnel Committee prior to his termination.

The Price County Sheriff's Department is located in the county-owned Safety Building, which also houses the Phillips Police Department. Subsequent to his termination, Heideman entered the secured area of the Sheriff's Department. Wirsing asked Phillips Police Chief, Craig Moore, to tell Heideman to stay out of this area. Price County does not have a policy or custom to prevent former employees from entering the place of their former employment.

## DISPUTED FACTS

The parties strongly dispute the nature of the argument at Meister's Bar, as well as the County's motives in discharging Heideman. Defendants characterize the incident as a "barroom brawl" devoid of political content, and state that Heideman was dismissed because of his conduct. Heideman portrays the bar incident as a heated political discussion. Heideman also maintains that he had openly campaigned against Wirsing's reelection and that Wirsing was aware of his political activities. Heideman contends that Wirsing caused the County to fire him because of his political opposition to Wirsing. Heideman argues the reasons given by defendant Price County for his termination were contrived and that he was actually fired for openly expressing and acting on his political views. Defendants dispute these contentions.

The parties also disagree on the contractual terms of Heideman's employment. Defendants claim that, as a probationary employee, Heideman could have been fired for any reason. They cite Article 9 of the "Master Agreement Between Price County and Price County Professional Deputies Association" which states:

All employees shall be on probation for the first year of their employment. During the first year of actual service the person appointed may be dismissed by the County for any reason. Such action is not subject to the grievance procedure.

Heideman claims that although he was a probationary employee, he was given certain

employment rights by the "Price County Sheriff's Department Rules, Regulations, Policies and Procedures" Manual (Policy Manual). This manual states in relevant part that "[n]o employee will be discriminated against in any way due to any political opinions held by the employee." Policy Manual, PO–16.

. Heideman contends that because Wirsing told the Phillips Police Chief that Heideman was not allowed to come into the sheriff's area of the safety building, Phillips has effectively fired him as a police officer. Defendants claim that Wirsing's only request to the Phillips Police Chief was that Heideman be told to stay out of the secured area of the Sheriff's Department.

Finally, Heideman contends that Wirsing slandered him to other police departments to which Heideman had applied for employment, which directly caused those departments not to hire him. Defendants dispute this allegation.

## DISCUSSION

I. *Heideman Has Sued Wirsing Personally As Well As In Wirsing's Official Capacity*

▉ Heideman contends that he has sued Wirsing in both his official and individual capacities despite the fact that the case caption reads "Wayne Wirsing," and does not specify in which capacity he is being sued.[2] Defendants claim that Wirsing is being sued solely in his official capacity. They argue, therefore, that the claim against him should be dismissed because an official capacity suit is merely an alternative way of pleading an action against an entity of which an officer is an agent, and Heideman has already sued Price County. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985).

In *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985), the Court of Appeals for the Seventh Circuit stated: "where a com-

plaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, we will *ordinarily* assume that he has been sued in his official capacity and only in that official capacity." *Id.* at 568 (emphasis added). In that case, the case name set forth only the defendant sheriff's proper name; no job title was used and it was not specified whether he was being sued in his official or individual capacity. *Id.* The body of the complaint also did not use the words "official capacity" or "individual capacity." *Id.* The *Kolar* court, nonetheless, construed the complaint to allege a complaint against the sheriff in his official capacity, partly because the defendant was referred to by his official name in the body of the complaint. *Id.* In conclusion, the court wrote that "[i]f a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities, he should expressly state so in the complaint." *Id.* at 568–69 (citations and footnote omitted).

In *Hadi v. Horn*, 830 F.2d 779 (7th Cir. 1987), the court held that the "totality of the circumstances" indicated that the plaintiffs intended to sue the defendants in their individual capacities even though the complaint charged that the defendants' acts were "done by Defendants not as individuals, but under the color and pretense of the statutes, regulations, customs and usages of the State of Illinois." *Id.* at 783. The *Hadi* court noted that the plaintiffs requested monetary damages and that the defendants had raised the issue of qualified immunity, a defense which is only available in individual capacity suits. *Id.* Interestingly, the court did not discuss *Kolar*.

In a recent Seventh Circuit case that does discuss *Kolar*, the court held that "in a suit where the complaint alleges tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir.

---

2. The difference between the two types of suit is that, "in an official capacity suit the plaintiff alleges that the defendant was party to the execution or implementation of official policy or conduct by a government [entity and] the real party

in interest is the entity, [while] an individual capacity suit focuses on the constitutional tort of an individual official." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir.1991).

1991) (citation omitted). That court noted that in construing complaints, the Seventh Circuit looked to the *nature of the conduct* alleged in the complaints. *Id.* at 1374 (emphasis added). It stated:

> The point of [*Kolar*] is not that an official capacity suit is to be presumed any time that the complaint fails to explicate clearly the capacity in which the defendant is to be sued. On the contrary, *Kolar* stands for the proposition that an official capacity suit will be presumed when the indicia of an official policy or custom are present in the complaint.

*Id.* at 1373 (citation omitted).

In addition to discussing *Kolar*, the *Hill* court discussed *Akins v. Board of Governors of State Colleges and Universities*, 840 F.2d 1371 (7th Cir.1988), *vacated on other grounds*, 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988). In *Akins*, it was found that when "read in its entirety," plaintiff's "objections to the magistrate's report" made it clear that plaintiffs intended to press on with their claim for injunctive relief. *Id.* at 1377. Since injunctive relief was only available for official capacity suits, the court concluded that the plaintiff was suing the defendant state officials in their official capacities—despite the fact that the complaint named the defendants only in their individual capacity. *Id.* Noting that punitive damages may only be recovered against government officials acting in their individual capacity, the *Hill* court similarly concluded, that when the plaintiff's complaint was "read in its entirety," it showed that an individual capacity suit was intended. *Hill,* 924 F.2d at 1374. The court also stated that the alleged conduct in the complaint involved the defendant's individual actions and did not allude to an official policy or custom. *Id.*

The general rule of this circuit, then, appears to be that a complaint should be read in its entirety to determine whether the alleged wrongful conduct was carried out in an individual or an official capacity. Also relevant is the course of proceedings.[3]

In the instant case, Heideman's complaint makes a general allegation that defendant Wirsing was acting in his official capacity at all times pertinent to the complaint. Despite this general allegation, however, Heideman recognized in his complaint that Wirsing was not the final decision maker in his firing. This indicates that Heideman knew that defendant Wirsing could not have been acting in his official capacity for any actions that led to his termination. Also, as in *Hill,* Heideman requests punitive damages.[4] Further, defendants claim qualified immunity as an affirmative defense in their answer and argue it in their briefs. Finally, if Heideman had intended to file only an official capacity suit against Wirsing, it would not have been necessary to name the defendant Price County in his complaint. All of these factors are indicia that Heideman intended to name Wirsing in his personal capacity.

In *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84 (2nd Cir.1991), the Second Circuit faced a case similar to this one. There, plaintiff's complaint did not specifically allege that one of the defendants was being sued in his individual capacity. Explaining that it had come "too far in the direction of modern pleading to return to the rigid rules of the past," the court stated that it "look[ed] to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided sufficient notice of potential exposure to personal liability." *Id.* at 88–89. That court held the complaint to state an individual capacity claim because plaintiff had requested punitive damages and the defendants had claimed qualified immunity. *Id.* at 89.

---

**3.** *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), which states: "In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Id.* at 167 n. 14, 105 S.Ct. at 3106 n. 14.

**4.** Plaintiff's request for punitive damages does not specifically state that he is requesting them for the alleged federal violations. While it is possible that he only seeks them for the state claims, the fact that plaintiff's most vigorously argued claim alleges employment termination in violation of §§ 1983 and 1985, it is reasonable to conclude that he seeks punitive damages for these claims.

The reasoning of *Yorktown Medical* is persuasive and consistent with Seventh Circuit precedent; in sum, I am led to conclude that Heideman's complaint, when read in its entirety, alleges a claim against Wirsing in his individual capacity.

## II. Summary Judgment Is Appropriate On Heideman's § 1983 First Amendment Claim

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Conner v. Reinhard,* 847 F.2d 384, 388 (7th Cir.1988), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). In deciding a motion for summary judgment, a court must consider all the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In this case, that means that Heideman gets the benefit of having the disputed facts listed above resolved in his favor for the purposes of my analysis.

■ In his § 1983 claim, Heideman contends that he was dismissed from the Price County Sheriff's Department because he expressed his political beliefs. In determining whether a complaint alleges a § 1983 action, the focus is on two essential elements:

(1) Whether the conduct of which the plaintiff complains was committed by a person acting under color of state law; and

(2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *See also Polenz v. Parrott,* 883 F.2d 551, 555 (7th Cir.1989). Heideman argues that the subject matter of his argument with the bartender at Meister's Bar related to the upcoming sheriff's election and was, thus, political speech that was necessarily protected by the First Amendment. For the purpose of this motion for summary judgment, I must accept as a fact the proposition that Heideman was terminated for actively opposing defendant Wirsing. Even accepting this proposition, I find that, under the law of this judicial circuit, the First Amendment does not protect Heideman's job as one of Wirsing's deputies after Heideman has actively and vigorously opposed Wirsing's re-election.

Heideman asserts that under *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), he has a constitutional right not to be fired for his politics. In *Elrod,* the court held that a nonpolicy-making employee could not be terminated solely on the grounds of political affiliation. *Elrod,* 427 U.S. at 372, 96 S.Ct. at 2689. In *Branti,* the court noted that there was an exception to this general rule and held that certain policy making and confidential employees could be dismissed on the basis of their political views when the hiring authority could demonstrate that political affiliation was an "appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. Heideman contends that political affiliation is not an appropriate requirement for the position of deputy sheriff in Price County.

■ The Court of Appeals for the Seventh Circuit, however, has decided otherwise: "political considerations *are* appropriate for determining qualifications for the position of deputy sheriff." *Upton v. Thompson,* 930 F.2d 1209, 1210 (7th Cir.), *reh'g, en banc, denied Thulen v. Bausman,* 938 F.2d 84 (7th Cir.1991), *and cert. denied,* —— U.S. ——, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992) (emphasis added). The *Upton* decision involved two separate cases in which deputy sheriffs claimed that their discharges were improperly motivated by their political party affiliations, thus infringing on their First Amendment rights. *Id.* at 1210. In both cases, the defendant sheriffs moved for summary judgment on the grounds of qualified immunity,

and the district courts denied those motions. *Id.* Government officials are generally given qualified immunity from civil damage suits when performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district courts had held that, at the time of the terminations, it was clearly established that a Sheriff could not discharge a deputy because of political affiliation and thus, the defendant sheriffs did not have qualified immunity. *Upton,* 930 F.2d at 1212.

The court of appeals disagreed and reversed, allowing both firings. It ruled first that the defendant sheriffs were entitled to qualified immunity, and second, that sheriffs could, under most circumstances, apply a political litmus test to their deputies. *Id.* at 1210.

On the first issue of qualified immunity, the court determined that the holdings of previous cases applying *Elrod* and *Branti* to similar fact situations were conflicting and confusing. *Id.* at 1212–14. Looking at its own precedent, the court recognized that it had developed the following test to determine when political affiliation was an appropriate reason for hiring or firing:

> whether the position held by the individual authorizes, either directly or indirectly, *meaningful input* into government decisionmaking on issues where there is room for principled disagreement on goals *or their implementation.*

*Id.* at 1214 (emphasis added) (quoting *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir.), *cert. denied* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985) (citation omitted)).

The court then analyzed both *Tomczak,* a case involving the discharge of a water department employee, and *Livas v. Petka,* 711 F.2d 798 (7th Cir.1983), a case involving the discharge of an assistant state attorney, observing that in those cases, "nonpolicymaking officials were deemed subject to political based firings because they were vested with substantial discretionary authority in the implementation of the policy goals of elected officials." *Upton,* 930 F.2d at 1215. Likewise, the court stated, "deputies on patrol or other assignment frequently work autonomously, giving them wide latitude and discretion in the performance of their duties and in the implementation of department goals." *Id.*

The court dismissed the plaintiff's contention that *Perry v. Larson,* 794 F.2d 279 (7th Cir.1986), required a holding of no qualified immunity for the defendant sheriffs. In *Perry,* the Seventh Circuit affirmed the sufficiency of a jury's verdict awarding damages to a deputy sheriff who alleged he was fired in retaliation for running against the defendant, the incumbent sheriff. The *Upton* court noted that in *Perry* the defendant sheriff did not raise the patronage issue or the immunity question, and thus, those issues were not addressed on appeal. *Upton,* 930 F.2d at 1216. The court also noted that there was a suggestion in *Perry* that the deputy's dismissal took place in violation of a local civil service ordinance. *Id.* citing *Perry,* 794 F.2d at 283. The *Upton* court concluded that since the law was not clearly established at the time the plaintiffs were dismissed, the defendant sheriffs were protected by qualified immunity. *Id.* at 1218.

The court also went on to conclude that "[b]ased on this court's approval of political terminations in other contexts, we conclude that deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies." *Id.* The court stated:

> In some states a politically silent deputy [might] officially align with a party simply by voting in the primary elections. This contrasts sharply with the politically active deputy who by vociferously campaigning for the loser, encounters Matthew 26:52: "All they that take the sword shall perish with the sword." State legislatures may choose to adjust state laws to protect some level of party affiliation or participation. Suffice it to say that under the First Amendment as interpreted by *Branti, Livas,* and *Tomczak,* a sheriff may use politi-

cal considerations when determining who will serve as a deputy sheriff.

*Id.* (footnote omitted).

In the instant case, none of the litigants addresses the sweeping holding in *Upton* that political considerations are appropriate for determining the qualifications of a deputy sheriff. This holding is certainly not *dicta,* as is clear from Judge Ripple's dissent from the circuit's decision not to rehear the case *en banc. Thulen v. Bausman,* 938 F.2d at 85–86 (Ripple, Wood, Cudahy and Posner, JJ., dissenting).[5]

█ Heideman, in his brief's argument on qualified immunity, attempts to distinguish *Upton* from his situation by contending that the factual basis for the *Upton* holding was that the sheriff was a policymaking individual who had sole responsibility for employment decisions, unlike the situation in the instant case. While the *Upton* court does describe the position of sheriff as that of a policymaker, *id.* at 1215–17, it is clear that the court is referring to the sheriff's power to implement law enforcement policies and not to his power to control employment policies decisions.[6]

In his qualified immunity analysis, Heideman also argues that *Upton* is inapplicable because there has been no showing that Heideman's actions or words had any disruptive effect upon the Price County Sheriff's Department. Though the *Upton* court discussed how a deputy's support of an opponent might be viewed as hostility towards the policies of the elected sheriff, *id.* at 1216, the court required no showing that the deputy's activities actually created a disruptive atmosphere. Neither of the defendants in *Upton* showed an actual disruptive effect caused by their deputy's actions. In *Upton,* plaintiff Derrell Upton's political activity included displaying a bumper sticker on his car and

giving an interview to reporters in his role as a prominent member of a union which supported the incumbent sheriff. *Id.* at 1211.[7] The other plaintiff in *Upton,* Jack Thulen, claimed he was fired when a new sheriff was elected because he had openly supported his own brother, the incumbent sheriff. Thulen's activities included being an "outspoken supporter," putting up signs, and attending fundraisers. *Id.* at 1211. The court found that Thulen took "a high profile in a hotly contested campaign which involved critical policy disputes relating to the proper operation of the Sheriff's Department." *Id.* at 1216.

█ While the exact scope of *Upton* is yet unclear,[8] Heideman's situation fits well within the parameters of *Upton.* In his amended complaint and his proposed findings of fact, Heideman alleges that he supported Wirsing's opponent in the sheriff's election by publicly announcing his support, passing out campaign literature, and engaging in other partisan activity. Heideman contends that it was Wirsing's awareness of these activities that eventually resulted in Heideman's termination. Even taking Heideman's allegations as true for the purpose of summary judgment, after *Upton,* it doesn't matter: deputy sheriffs who actively campaign against their bosses may be fired for that reason.

█ The *Upton* holding also disposes of the incident at Meister's Bar. After *Upton,* it makes no difference that I grant the inference to Heideman that the confrontation was at its heart political. Heideman admitted that obscenities and vulgarities were exchanged during the quarrel in the tavern. Such obstreperous support by Heideman for Wirsing's challenger could reasonably lead Wirsing to conclude that Heideman was not

---

**5.** *See infra,* n. 8.

**6.** A sheriff who is not a policy-maker as far as employment practices are concerned can still be the final policy-maker for law enforcement practices. *Pembaur v. Cincinnati,* 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986). *See also St. Louis v. Praprotnik,* 485 U.S. 112, 140, 108 S.Ct. 915, 933, 99 L.Ed.2d 107 (1988) (discussing *Pembaur* ).

**7.** I note that the defendant sheriff in that case stipulated that the plaintiff had been fired for political reasons. *Upton,* 930 F.2d at 1211.

**8.** *See Thulen v. Bausman,* 938 F.2d at 85: "[a]lthough—perhaps *because*—[the rule in *Upton* ] is so sweeping, its scope is also unclear. Does it apply only ... when deputies are politically active, or whenever they have political allegiances that differ from those of their superiors?" (emphasis in original, footnote omitted).

earnestly carrying out the policies that Wirsing had been elected to enforce. Wirsing is allowed to cause Heideman's firing if Wirsing concludes that Heideman's political views would "interfere in carrying out [the sheriff's] stated policies." *Id.* at 1216.

*Upton* clearly takes Wirsing off the hook on Heideman's § 1983 First Amendment claim.

■ Upton is also dispositive of Heideman's claims against Price County. First, since those claims flow directly from the County's alleged approval of the Wirsing's alleged actions, the County cannot be secondarily liable if Wirsing is not primarily liable. There is no allegation that Price County's Law Enforcement or Personnel Committees were acting on their own when they fired Heideman; according to Heideman, they were simply the "fronts" for Wirsing's political vendetta. If this is true, they could not have violated Heideman's First Amendment rights simply by validating an action that the First Amendment allowed Wirsing to take directly.

Similarly, there can be no claim if Price County's Boards did *not* act at defendant Wirsing's behest. I note first that Heideman does not allege this; his entire complaint is premised on his claim that Wirsing's malfeasance permeated the entire firing process by way of a provable conspiracy. If Heideman were to claim now that the committees were acting independently of Wirsing, there would be no factual nexus between Heideman's political beliefs and the committees' decision to fire Heideman. Even if the committees did, on their own, fire Heideman for failing to support Wirsing, it seems that *Upton* allows them to draw the same conclusions about policy implementation that Wirsing is personally allowed to draw. Therefore, Heideman has no First Amendment claim against anyone.

For the foregoing reasons, it is recommended that defendants' motion for summary judgment on plaintiff's § 1983 action be granted insofar as it relates to a First Amendment claim.[9]

III. *Heideman's § 1983 Due Process Claim Survives Against Price County*

■ As I noted in the introduction, my decision on the First Amendment Claim does not end the inquiry under § 1983. Read liberally,[10] Heideman's complaint also alleges that defendants (a) deprived Heideman of a property interest in his position with the Price County Sheriff's Department without due process; and (b) deprived Heideman of a property interest in his position with the Phillips City Police Department without due process.

As explained below, I find that this first implicit claim should survive against Price County, but that Wirsing and Price County are entitled to summary judgment on the other claim because it is not supported in the record.

A. *Heideman has a Due Process Claim Against Price County*

■ If a public employee has a property interest in a job, the Due Process Clause requires that some type of hearing be held before dismissal. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). State law determines whether a property interest in employment exists. *Farmer v. Lane,* 864 F.2d 473 (7th Cir.1988).

■ Here, although the parties never directly address this issue in a Fourteenth Amendment Context, they back into it in their discussions of the state law contract claims. Price County and Wirsing claim that Heideman had no right not to be fired because Heideman was bound by a collective bargaining agreement that allowed proba-

---

9. I note that neither party has addressed the issue of whether the Wisconsin Constitution gives more free speech protection than the United States Constitution. My conclusion that plaintiff's First Amendment rights were not violated, therefore, does not preclude a free speech claim by plaintiff under the Wisconsin Constitution.

10. A civil rights complaint should be read liberally. *See e.g. Wilson v. Civil Town of Clayton,* 839 F.2d 375, 379 (7th Cir.1988).

tionary employees to be fired without cause. Heideman admits that he was a probationary employee, but, nonetheless, contends that the Price County Sheriff Department's Policy Manual granted him a property interest in his position. Although no one offered the contents of the Policy Manual as a proposed finding of fact, Heideman did put into the record this portion of the Price County Sheriff's Policy Manual:

SUBJECT: POLITICAL ACTIVITIES

*General Policy*

Every American has the right to engage in the political process; however, that right may in some cases be limited due to the unusual nature of an individual's position in society.

Deputies should not engage in political campaigns to such an extent that their participation detracts from the performance of their official duties. They should not engage in such a way that would allow members of the electorate to conclude that the Department is taking a position in an election.

*Discrimination*

"No employee will be discriminated against in any way due to any political opinions held by the employee."

Policy Manual, PO–16 (Aff. of Scott P. Hassett, Exh. E–6, Docket No. 37).

If this policy applied to Heideman, he at least had the right not to be discriminated against because he supported Wirsing's opponent; whether he had the right under PO–16 to do what he admits he did in the tavern is a different question. Indeed, that question need not be answered unless PO–16 gives Heideman some property interest in his job separate from his status as a probationary employee. Therefore, the first question to answer is whether the policy manual was part of Heideman's employment contract.

In *Ferraro v. Koelsch,* 124 Wis.2d 154, 368 N.W.2d 666 (1985), the Wisconsin Supreme Court concluded that, "as a matter of law, an employment contract can be modified by the use of an employee's handbook." *Id.* 124 Wis.2d at 169, 368 N.W.2d 666. "Whether there is an intent to make a contract is a question of fact, which must be ascertained from the parties' words and actions." *National Steel Service Center, Inc. v. Wollin Silos & Equipment, Inc.,* 92 Wis.2d 133, 138, 284 N.W.2d 606 (1979). Defendants, citing *Holloway v. K–Mart Corp.,* 113 Wis.2d 143, 146, 334 N.W.2d 570 (Ct.App.1983), argue that an employer has the right to disregard its own, self-imposed procedures or to change them at will without the consent of the employee. In *Holloway,* however, the employer's policies were not written and it was clear that the policies were not part of any employment contract. In the instant case, it is not clear what part the written policy manual played in the parties' employment relationship.

Defendants also claim that no contract existed because when Heideman was asked at his deposition "what was your understanding of what [the policy] manual was supposed to do for you, if anything?" he responded, "nothing really." Affidavit of Cassandra Westgate, p. 8. Heideman, on the other hand, claims that he was required to review and sign the policy manual, and states that he followed the policies set forth in the manual.

I find that material facts are still in dispute concerning the relevance of the policy manual to Heideman's firing process. On the facts in this record, giving Heideman the benefit of all doubts, I cannot find as a matter of law that Heideman had no employment contract.

■ Since I have found that Heideman implied a Due Process claim in his § 1983 claim, this dispute of material fact, when coupled with the applicable law, prevents the grant of summary judgment to Price County. As the Court of Appeals for the Seventh Circuit has held,

The Due Process Clause requires that prior to the termination of a public employee with a property interest in his employment, the employer must give oral or written notice of the charges against the employee, explain the evidence against the employee, and give the employee an opportunity to present his side of the story to the employer.

*Domiano v. River Grove*, 904 F.2d 1142, 1148 (7th Cir.1990). These procedures were not followed when Price County fired Heideman; thus if Heideman can prove that he had a property interest in that his position as deputy sheriff, he has a claim for deprivation of a property interest without due process.

■■■ This due process claim can only be maintained against defendant Price County. Wirsing did not have the power to terminate Heideman and, thus, could not deprive him of due process. Any damages that may have resulted from Wirsing's alleged interference with Heideman's employment relationship with the County could be recovered under a state action for tortious interference with contractual relations. *See Zinermon v. Burch*, 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) ("The constitutional violation actionable under § 1983 is not complete unless and until the State fails to provide due process.") Thus, Heideman has no action against Wirsing for his termination from the Sheriff's Department.

The fact that Wirsing was a member of the Law Enforcement Committee and attended the meeting at which it considered Heideman's case and voted to recommend firing does not affect this analysis. According to the minutes of the meeting (which Wirsing kept), Wirsing did not vote on the Heideman recommendation. (Hassett Affidavit, Exh. F, docket no. 37.) It is not clear what input Wirsing had into the Committee's deliberations. This does not allow Heideman to continue on this Fourteenth Amendment claim against Wirsing personally or in his capacity as sheriff. The only evidence in the record is that Wirsing was present as a *bona fide* committee member. Nothing in the record indicates that Wirsing had any less right to be present and participate in this proceeding than other committee members.[11] He therefore must be treated like the other committee members for the purpose of analyzing any due process claim. An individual claim will not stand against Wirsing on this claim any more than such a claim would stand against any other committee member, none of whom has been named as a defendant.

In sum, since the parties dispute whether Heideman had a right not to be fired for his political views under his employment agreement, and since the facts material to this question allow differing inferences, I am recommending that the court not grant summary judgment to Price County on this claim.

B. *Heideman Has No § 1983 Claim For Losing His Job With The City Of Phillips*

■■■ Heideman argues in his supplemental state law claims that defendants deprived him of his employment with the City of Phillips Police Department. His complaint, liberally construed, could be read to allege this as another due process violation in violation of § 1983.

■■■ Heideman cannot maintain such an action against defendants even if he did have a property interest in that employment. In a § 1983 claim for deprivation of a property interest, a plaintiff must prove more than the mere fact that deprivation occurred; the plaintiff must also show that the deprivation was without due process. *Parratt v. Taylor*, 451 U.S. at 536–37, 101 S.Ct. at 1913–14. Under *Parratt*, a person does not state a due process claim for deprivation of a property interest if an adequate state-law remedy is available. *Id.* at 539, 101 S.Ct. at 1914–15; *See also Zinermon*, 494 U.S. at 126, 110 S.Ct. at 983. Though plaintiff's complaint states that defendants deprived him of his job with the Phillips City Police Department, defendants were not plaintiff's employers for that position and thus were not in a position actually to terminate him.

Heideman's complaint simply alleges that defendants' actions *caused* Heideman to lose

---

**11.** Whether this was a conflict of interest by Wirsing is a different question from whether his actions can be considered a violation of Heideman's right to due process. As noted above, Wirsing personally had no power to determine what process the committee gave Heideman, and there is no evidence in the record indicating that Wirsing acted *sub rosa* to cause the committee not to give Heideman more process. Indeed, to the extent that this issue is addressed, it appears that both County Committees relied upon the City Attorney's advice in deciding that Heideman, as a probationary employee, was not entitled to a hearing.

his job, in a very indirect fashion. According to Heideman, Wirsing told the police chief that Heideman was not to come into the sheriff's area of the building, and that as a direct result of this, Heideman was not called into work any more for the police department. According to Heideman, Price County's Law Enforcement Committee approved of this action by Wirsing.

Elsewhere in his complaint, Heideman has sued defendants for tortious interference with contractual relations. This is an adequate state remedy for defendants' alleged actions. Thus, Heideman cannot maintain a § 1983 claim against defendants for having caused him to lose his position with the Phillips City Police Department.

### IV. *Heideman Fails to State a Claim Under § 1985*

■ Defendants move to dismiss Heideman's § 1985 claim under Rule 12(b)(6) for failure to state a claim. A complaint may only be dismissed if it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Vagueness or lack of detail are insufficient grounds to dismiss under Rule 12(b)(6), *Strauss v. Chicago*, 760 F.2d 765, 767 (7th Cir.1985), but a court should not draw inferences unless they are plainly apparent from the face of the complaint. *Coates v. Illinois State Board of Education*, 559 F.2d 445, 447 (7th Cir.1977).

■ Four elements comprise a § 1985(3) cause of action: "(1) a conspiracy (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983).

Insofar as Heideman's § 1985(3) claim relates to his discharge from the Sheriff's Department on First Amendment grounds, I find *Upton* dispositive based on the analysis previously set forth. Heideman cannot sue Wirsing or the County for conspiring to deprive him of a nonexistent or unprotected right.[12]

■ Applying the same liberal construction to this conspiracy count that I applied to the substantive count, I find that Heideman's § 1985 count can also be read to allege a conspiracy to deprive Heideman of property interests in his employment with the Phillips City Police Department and the Sheriff's Department. Having read into the § 1985 count an allegation that plaintiff has not argued, nevertheless I now find that Heideman has failed to state a conspiracy claim of any sort upon which relief could be granted. Dismissal under Rule 12(b)(6) is appropriate.

■ The Court of Appeals for the Seventh Circuit has held that "mere allegations of a conspiracy are insufficient to withstand a motion to dismiss." *House v. Belford*, 956 F.2d 711, 720 (7th Cir.1992) (quoting *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985)). Heideman's proposed findings of fact and pleadings add nothing to the complaint's bare allegations of conspiracy.[13] Heideman argues that the record shows that the Price County Law Enforcement Committee chose to ignore evi-

12. This also disposes of the late-filed affidavits of other Sheriff's Department employees who allege that Wirsing punished them for their political beliefs. Even if he did, it was not actionable because of *Upton*. Further, this type of testimony is more in the nature of Rule 404(b) evidence rather than evidence of a conspiracy, since the affiants do not allege that Wirsing conspired with anyone in acting as he did.

13. Again, the late-filed affidavit of Phillips Police Chief Craig Moore adds nothing to the claim.

Wirsing's alleged comment to Chief Moore before the first hearing that Heideman did not work for the Sheriff's Department any more does not raise an issue of material fact on the due process conspiracy claim. Regardless of the *literal* truth of the statement Wirsing allegedly made, even the inference drawn by Heideman from the statement does not show a conspiracy between Wirsing and the Committee to do anything.

dence concerning the incident at Meister's Bar, and notes that the committee did not give him a chance to state his version of the episode. The fact that the committee did not conduct a complete investigation, however, does not, in itself, constitute a conspiracy, or even allow me to infer one. The crux of a conspiracy is an agreement or an understanding. *See, e.g., House*, 956 F.2d at 720. Heideman has not presented any direct or circumstantial evidence that shows that the allegedly deficient investigation was conducted pursuant to any agreement or understanding between defendant Price County and defendant Wirsing.

The complaint states that "Price County" conspired with Wirsing but, significantly, does not state with which members of the County's committees defendant Wirsing allegedly conspired. Wirsing was on the Law Enforcement Committee. He attended the meeting at which Heideman's case was decided. Wirsing did not have to conspire with Committee members in his "individual" capacity to accomplish anything; he could accomplish his alleged goals by simply attending the meeting and giving his input in an "official" capacity. As a committee member, Wirsing cannot conspire with himself in violation of § 1985.

■ While it is possible that agents of defendant Price County were misled by actions undertaken at the behest of Wirsing, there is no evidence whatsoever that would demonstrate a mutual understanding between the named defendants to deprive Heideman of any property or liberty interest. Wirsing's "agent," Chief Deputy Gould, is not an alleged coconspirator. There is no claim that Wirsing conspired with any committee members outside of the formal review process. Hence, there is no nexus between any two people that would allow even the inference of an actual conspiracy properly to be drawn. Accordingly, I recommend that defendants' motion to dismiss Heideman's plaintiff's § 1985 claim be granted.[14]

## V. *Some of Heideman's Pendant, State-Based Claims Must Be Dismissed*

■ Defendants have moved to dismiss Heideman's state law breach of contract claim. As discussed above, however, there is a dispute whether an actionable employment contract existed between Heideman and Price County; therefore, I recommend that Defendants' motion to dismiss Heideman's state law contract claim against Price County be denied.[15]

■ Defendants have also moved to dismiss Heideman's claims for violations of Wis. Stat. §§ 134.01 and 134.02, arguing that no specific facts have been alleged to support a conspiracy. Heideman's § 134.01 claim alleges that the defendants conspired to injure his reputation and prevent him from continuing his employment with the City of Phillips. Heideman's § 134.02 claim alleges that defendants conspired to prevent him from continuing his employment with the City of Phillips and to prevent him from obtaining other employment.

■ Wisconsin law of civil conspiracy requires a complaint to allege: "(1) [t]he formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Onderdonk v. Lamb*, 79 Wis.2d 241, 247, 255 N.W.2d 507 (1977). A complaint alleging conspiracy will fail if it "fails to state with any specificity the acts ... engaged in by the defendants in furtherance of the conspiracy." *Id.* at 248, 255 N.W.2d 507.

Heideman's most specific allegation of a mutual agreement between defendants is that "[t]he Price County Law Enforcement

14. There are no surviving federal constitutional claims against Wirsing. Price County cannot be held liable for punitive damages in a civil rights action. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Accordingly, Heideman's Ninth Claim for Relief retains viability only to the extent that any of the surviving pendant state law claims allows punitive damages.

15. Though Heideman refers to "defendants" in his breach of contract claim, I have not read his complaint to allege this claim against defendant Wirsing. Wirsing had no power to terminate Heideman, and thus, Heideman can maintain no such claim against him.

Committee was informed of [defendant] Wirsing's actions and concurred in those actions." Heideman's Amended Complaint ¶ 42. This is not enough. "The mere knowledge, acquiescence or approval of a plan, without cooperation or agreement to cooperate, is not enough to make a person a party to a conspiracy, [t]here must be intentional participation in the transaction with a view to the furtherance of the common design." *Winslow v. Brown*, 125 Wis.2d 327, 331, 371 N.W.2d 417 (App.1985) (citation omitted). Heideman has not made any of the necessary allegations to allow these claims to go forward. Accordingly, I recommend that defendants' motion to dismiss Heideman's §§ 134.01 and 134.02, Stats., claims be granted.

## VI. *Supplemental Jurisdiction Exists Over Defendants*

■■■ Although I have recommended summary judgment or dismissal of almost all of Heideman's federal claims, Heideman still has a federal § 1983 due process claim surviving against Price County. Accordingly, on the facts in this case, this court has jurisdiction over Heideman's surviving state-based claims against Price County *and* Wirsing. Title 28 U.S.C.A. § 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties.

28 U.S.C.A. § 1367(a) (1976 & Supp. 1992).

Heideman's entire case arises out of the termination of his employment. His state claims and his federal claim are simply different legal approaches to the same set of allegations. There is no doubt that Heideman's state law claims form part of the same case and controversy as Heideman's federal constitutional claim. The last sentence of the subsection makes it clear that this court also has supplemental jurisdiction over Heideman's state law claims against Wirsing, even though there are no surviving federal claims against Wirsing.

The exception provided in subsection (b) of the statute deals with supplemental claims where the original claim is based on diversity; this subsection, therefore, is irrelevant to this case. Subsection (c) states that a district court may decline to exercise supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c) (1976 & Supp.1992). Neither party has suggested that the claims in this case raise novel or complex issues of State law. Also, while the state claims may be just as important as the remaining claim, I cannot say that they *substantially* predominate over it. Finally, this court has not dismissed all claims over which it has original jurisdiction, and there does not appear to be any compelling reason why this court should decline jurisdiction in this case. Indeed, to do so would simply put the parties through two virtually identical trials, one in federal court, the other in state court. Accordingly, I recommend that the court retain jurisdiction over plaintiff's state-based claims.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I respectfully RECOMMEND that:

1. Defendant Wayne Wirsing's motion to dismiss all federal claims against him on the ground that plaintiff failed to sue him in an individual capacity be DENIED;

2. Defendants' motion for summary judgment on plaintiff's § 1983 claim based on the First Amendment be GRANTED as to both defendants;

3. Defendants' motion for summary judgment on plaintiff's § 1983 claim based on the Fourteenth Amendment be GRANTED as to Defendant Wayne Wirsing and DENIED as to Defendant Price County;

4. Defendants' motion to dismiss plaintiff's § 1985 claim be GRANTED as to both defendants;

5. Defendant Price County's motion to dismiss plaintiff's claim for punitive damages on the federal civil rights claims against the County be GRANTED;

6. This court exercise its supplemental jurisdiction over both defendants on all surviving state law claims, including those that defendants did not move to dismiss;

7. Defendants' motion to dismiss plaintiff's state law claims under Wis.Stat. §§ 134.01 and 134.02 be GRANTED as to both defendants; and

8. Defendants' motion to dismiss plaintiff's breach of contract claim be DENIED.

Entered this 29th day of May, 1992.