**Dwaine JESSAMY, Plaintiff,**

v.

**CITY OF NEW ROCHELLE, NEW YORK; Lewis Wendell, Deputy Commissioner of Development; Michael Ritchie, Commissioner; and Timothy Idona, Mayor, Defendants.**

**No. 02 CIV. 10148(WCC).**

United States District Court, S.D. New York.

Nov. 19, 2003.

Law Offices of Sanford A. Kutner (Sanford A. Kutner, Esq., Of Counsel), Metairie, LA, for Plaintiff.

Law Office of Vincent Toomey, (Vincent Toomey, Esq., Thomas J. Marcoline, Esq., Of Counsel), Lake Success, NY, for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Dwaine Jessamy brings this action pursuant to 42 U.S.C. §§ 1981

and 1983 for damages and declaratory and injunctive relief against defendants City of New Rochelle (the "City"), Lewis Wendell, the City's Deputy Commissioner of Development, Michael Ritchie, the City's former Commissioner of Development and Timothy Idoni,[1] the City's Mayor. (Complt. ¶¶ 1, 3-7.) Plaintiff claims that defendants violated his Fourteenth Amendment rights when they acted under color of law and pursuant to official policy in connection with his employment by the City and: (1) discriminated against him on the basis of his race; (2) harassed him on the basis of his race; and (3) conspired to violate his Fourteenth Amendment rights.[2] (Id. ¶¶ 20-22.) Defendants move this Court to dismiss plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(5) for insufficiency of service of process. (Defs. Mem. Supp. Summ. J. at 9-12.) Defendants also move to dismiss plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and alternatively, for summary judgment pursuant to FED. R. CIV. P. 56. (Id. at 1, 12-29.) With respect to defendants' Rule 12(b)(5) motion, which must be addressed

before turning to the merits of the case,[3] we will deny that motion as we assume without deciding that plaintiff's service of process was proper.[4] For the reasons set forth herein, the Court converts defendants' Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56 and grants defendants' motion for summary judgment dismissing plaintiff's claims: (1) against the City and the individual defendants in their official capacities; and (2) against defendants for harassment and racial discrimination. The Court also dismisses plaintiff's remaining claims, without leave to replead.

## BACKGROUND

### I. Procedural Posture of Defendants' Motion

▆▆▆ The procedural posture of this case affects directly the source of the facts contained herein. The court may convert a motion to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(6) into a FED. R. CIV. P. 56 motion for summary judgment if it relies on material outside of the pleadings and the opposing party has both

---

1. Idoni is identified incorrectly in the Complaint as "Timothy Idona." (Defs. Mem. Supp. Summ. J. at 2, 14, discussing Complt. ¶ 2.)

2. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

3. See, e.g., Mende v. Milestone Tech., Inc., 269 F.Supp.2d 246, 251 (S.D.N.Y.2003) ("Before addressing Defendants' Rule 12(b)(6) claims, the Court must first address the preliminary questions of service and personal jurisdiction.").

4. A court may assume without deciding that the plaintiff properly has served the defendants in a timely manner. The Second Circuit has noted that FED. R. CIV. P. 4(m) allows courts to excuse a plaintiff's failure to serve process properly and timely and has stated that "[s]ince the failure timely to serve a summons and complaint on the opposing par-

ty is excusable, this is not an exercise of hypothetical jurisdiction of the sort disapproved of by the Supreme Court in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 1012-16, 140 L.Ed.2d 210 (1998)." United States v. Vazquez, 145 F.3d 74, 80 & n. 3 (2d Cir.1998) (assuming without deciding that Connecticut Attorney General was proper party to action when "he simply claims (apparently correctly) that service of process on him was never properly effectuated"); accord Schafrann v. Republic of Venezuela, No. 01 Civ. 10637, 2002 WL 1766446, at *1 n. 1 (S.D.N.Y. July 31, 2002) ("We assume, without deciding, that the complaint and instant motion were both properly served."); Louis Dreyfus Corp. v. McShares, Inc., 723 F.Supp. 375, 378 (E.D.La.1989) ("Assuming without deciding that service was properly effected on September 1, 1989 or shortly thereafter, I turn to Inter-Industry's motion to dismiss for lack of personal jurisdiction.").

notice of the court's intent and the opportunity to respond with extrinsic material outside of the pleadings. *Washington v. County of Rockland,* 211 F.Supp.2d 507, 512 n. 8 (S.D.N.Y.2002) (Conner, J.) ("However, because this Court relies on material outside of the pleadings in deciding this motion, treating the instant motion as one under 12(b)(6) is inappropriate."); *Metrokane, Inc. v. Wine Enthusiast,* 185 F.Supp.2d 321, 325 (S.D.N.Y.2002) (Conner, J.) (citing *Green v. Doukas,* 205 F.3d 1322, 2000 WL 236471, at *2 (2d Cir.2000), and *In re G. & A. Books, Inc.,* 770 F.2d 288, 294–95 (2d Cir.1985), for the proposition that notice by the opposing party is the "essential inquiry"). This Court has held that a plaintiff has had the requisite notice when it responds to the defendants' "explicit request" for conversion of a motion to dismiss to one for summary judgment by submitting extrinsic materials of its own. *Metrokane, Inc.,* 185 F.Supp.2d at 325.

In the instant case, defendants' notice of motion expressly states that they seek summary judgment, and the motion papers include a multitude of supporting affidavits and exhibits in addition to a Rule 56.1 Statement. (Defs. Notice of Mot.) Plaintiff's opposition memorandum acknowledges expressly the nature of defendants' motion by citing the Rule 56 standard of review and by arguing that he "has unequivocally established there exists a genuine issue of material facts that should be

properly triable by a jury." (Pl. Mem. Opp. Summ. J. at 1.) Moreover, plaintiff's opposition memorandum discusses expressly facts that go beyond the allegations contained in the Complaint, albeit without the aid of supporting citations. (*Id.* at 3–5.) Accordingly, we conclude that plaintiff had the requisite notice of the nature of defendants' motion and that it is appropriate to treat defendants' motion as one for summary judgment.

■■■ Defendants accompanied their Motion to Dismiss and For Summary Judgment with a Statement of Undisputed Facts, as is required by Local Rule 56.1.[5] Plaintiff, however, did not file with his response the required counter-statement admitting or denying these facts. Generally, the "plaintiffs' failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003); *see also Millus v. D'Angelo,* 224 F.3d 137, 138 (2d Cir.2000) (concluding that there was no genuine issue of material fact to be tried following plaintiff's failure to deny defendants' allegations in Rule 56.1 statement). This Court endeavors, however, to avoid penalizing parties harshly as a result of technical errors by their attorneys, and "will deem the facts set forth in plaintiff's mem-

5. Local Rule 56.1 provides:

 (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

 (b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material

facts as to which it is contended that there exists a genuine issue to be tried.

 (c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

 (d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

orandum of law sufficient to satisfy Rule 56.1 to the extent that the rule is otherwise complied with. However, where a stated fact is nowhere controverted, it will be deemed admitted." *Williams v. R.H. Donnelley, Inc.*, 199 F.Supp.2d 172, 173 n. 1 (S.D.N.Y.2002) (Conner, J.); *see also Shepard v. Frontier Comms. Servs., Inc.*, 92 F.Supp.2d 279, 284 (S.D.N.Y.2000) (Conner, J.) ("However, plaintiff's Rule 56.1 statement includes several statements of disputed facts that are not supported by a citation to the record.... Although not grounds for deeming all of the material facts set forth by defendants' Rule 56.1 statement as true, this Court will not consider any statements made by plaintiff in her Rule 56.1 statement that are not supported by a citation to the record."). In the present case, plaintiff's brief in opposition to defendants' motion contains a Statement of Facts. That statement is, however, of minimal helpfulness to the Court because it is not supported by citations to admissible evidence in the record. (Pl. Mem. Opp. Summ. J. at 2–5.) Thus, we are left with no choice but to treat as admitted all statements of fact contained in defendants' Rule 56.1 Statement that are supported and verified by admissible evidence contained in the record. Accordingly, we now turn to defendants' Rule 56.1 Statement for an account of the underlying facts.

## II. *Facts*

The City employed plaintiff, an African–American male, from April 1994 until June 30, 2002 as a rehabilitation specialist in the City's development department.[6] (Defs. Rule 56.1 Stmt. ¶¶ 2–4; Complt. ¶¶ 3, 8–9,

14.) In that position, plaintiff was responsible for coordinating the residential rehabilitation program, which provided City-subsidized home improvement loans to qualified City residents. (Defs. Rule 56.1 Stmt. ¶ 7; Complt. ¶ 10.) In addition to advising homeowners and tenants who sought to rehabilitate their residential properties, plaintiff also was responsible for obtaining and monitoring contractors that performed the actual rehabilitation work. (Defs. Rule 56.1 Stmt. ¶ 7.) Plaintiff's 2002 annual salary was $68,480 and he received benefits pursuant to a union contract that included paid sick and vacation time and health insurance contributions. (*Id.* ¶ 6.) From 1998 through 2001, the residential rehabilitation program performed an average of ten, but not more than fourteen home improvement projects per year. (*Id.* ¶ 9; Wendell Aff. ¶¶ 7–8.) The development department and its residential rehabilitation program are funded with City money that includes the proceeds from an annual Community Development Block Grant ("CDBG") from the Department of Housing and Urban Development ("HUD"). (Defs. Rule 56.1 Stmt. ¶¶ 12, 16.)

During 2001, the City consolidated the development department's offices from several different buildings into a single office at City Hall. (*Id.* ¶ 31.) Wendell, the Deputy Commissioner of Development, asked plaintiff to assist with this move by helping to pack and move boxes, a task that Wendell and other department employees performed as well. (*Id.*) Plaintiff refused to assist with the department's relocation.[7] (*Id.*) The City has an anti-

---

6. Plaintiff contends that he performed his duties "enthusiastically" and "in an exceptional manner." (Complt. ¶ 11; Pl. Mem. Opp. Summ. J. at 3.) Defendants do not discuss the quality of plaintiff's job performance.

7. Plaintiff contends in his memorandum that these tasks were part of a racially motivated plan of the defendants that started with the hiring of Wendell to create a pervasively abusive working environment by giving him janitorial, rather than supervisory tasks. (Pl. Mem. Opp. Summ. J. at 3.)

discrimination and harassment policy and complaint procedure that prohibits harassment based on, inter alia, race, a copy of which was given to plaintiff. (*Id.* ¶ 32.) Neither plaintiff nor his union ever filed a complaint or grievance against Wendell pursuant to the policy. (*Id.* ¶¶ 32–33.)

Thereafter, as a result of declining revenues,[8] the City faced a fiscal crisis that resulted in significant budget cuts in 2002. (*Id.* ¶ 10.) Specifically, the City reduced its appropriated expenditures for 2002 by $109 million, but still had to draw upon its fund balance. (*Id.* ¶ 14.) The reduced expenditures led to a variety of program and service cuts, which included removing a fire truck from service, deferring the hiring of police officers, reducing contributions to self-insurance funds and eliminating 14.5 employee positions. (*Id.* ¶ 15; Allen Aff., Ex. A at v.) Among these budget cuts, HUD reduced the City's 2002 CDBG from $2,041,000 to $1,961,000, a diminution of $80,000. (Defs. Rule 56.1 Stmt. ¶ 13.) As a result of the CDBG reduction and the shortage of other funds in the City's general budget, the development department was forced to cut its budget. (*Id.* ¶ 16.)

In the development department, Ritchie, as commissioner, recommended that the positions of rehabilitation specialist (held by plaintiff) and project manager be cut from the 2002 budget because those positions had been underachieving.[9] (*Id.* ¶¶ 17, 19.) The City Council, which is ulti-mately responsible for adopting the final budget, ratified the 2002 budget, as amended, on December 18, 2001. (*Id.* ¶¶ 20–21; Allen Aff., Ex. A at xi.) This budget retained the two positions for six months and eliminated them effective June 30, 2002. (*Id.* ¶ 22.)

Thereafter, the development department informed plaintiff and Debbie Gross, the project manager, that their positions were scheduled for elimination in six months and advised them to seek new employment. (*Id.* ¶ 22.) Gross, a white female, earned an annual base salary of $62,371 in 2002. (*Id.* ¶ 23.) She found a new job approximately two months later and the City did not fill her position after she left. (*Id.*) Plaintiff, however, despite repeated admonitions from the development department that his position was slated for elimination, remained in the City's employ until June 30, 2002, on which date he was laid off and his position abolished. (*Id.* ¶ 24.) The City has neither funded nor filled either of those two positions since that date. (*Id.* ¶ 25.) The union did not file a grievance with respect to elimination of plaintiff's position. (*Id.* ¶ 34.)

After plaintiff's position was eliminated, there were approximately eight residential rehabilitation projects that needed to be completed. (*Id.* ¶ 26.) Wendell requested proposals from three private contractors to assist with winding down these remaining

---

8. The City's property tax revenues in 2002 were $1 million less than they were in 1993, despite the City's attempts to increase revenues by raising taxes. (Defs. Rule. 56.1 Stmt. ¶ 11.) Defendants point out that the City is subject to a property tax cap imposed by the New York State Legislature. Under that cap, the City may not raise property taxes at a rate greater than the increase in the consumer price index for the New York City metropolitan region for the preceding year. (*Id.*)

9. Plaintiff claims in his memorandum that Ritchie told plaintiff that his position would be eliminated unless he could produce the "unrealistic goal" of 20–25 new projects in the next six months. (Pl. Mem. Opp. Summ. J. at 4.) Plaintiff also claims that Wendell continued to assign him janitorial tasks at this time, and that after he refused, Wendell instructed plaintiff to discontinue all newspaper advertising for residential rehabilitation, which made it "very difficult" for plaintiff to meet the goal set by Ritchie. (*Id.*) Plaintiff also claims, without supporting evidence, that he e-mailed Wendell in an attempt to persuade him to reinstate the advertising program. (*Id.*)

projects. (*Id.* ¶ 27.) He received responses from two of the three; one for $135 per hour, and the other from Angela Witkowski, a white female, at the rate of $50 per hour. Wendell hired Witkowski because of her lower hourly rate. (*Id.*) Witkowski was hired as an independent contractor, and was required pursuant to her contract with the City to "strive to limit her hours to 40 hours per month or 5 to 10 hours per week." (*Id.* ¶ 29; Wendell Aff., Ex. D ¶¶ 3, 10.) The City did not provide her with an assistant. (Defs. Rule 56.1 Stmt. ¶ 29.) Witkowski is no longer retained by the City to provide any services.[10] (*Id.* ¶ 30.)

## DISCUSSION

### I. *Applicable Standard of Review*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

### II. *Claims Against the City and the Individual Defendants in Their Official Capacities*

#### A. *Nature of Action*

■ Defendants first contend that plaintiff's claims under §§ 1981 and 1983 should be dismissed because he has not alleged a constitutional violation resulting from a municipal custom or policy. (Defs. Mem. Supp. Summ. J. at 12.) Specifically, they contend that plaintiff brought this action against the individual defendants in their official capacities only, a posture that requires the present case to be treated as an action against the City alone. (*Id.* at 12–13.) In response, plaintiff contends that his Complaint does assert claims against individual defendants in their personal, as well as their official capacities, and thus he need only prove that the officials acted under color of state law to deprive him of a federal right. (Pl. Mem. Opp. Summ. J. at 11–13.) We agree with plaintiff and conclude that his Complaint sufficiently asserts claims against defendants in their personal capacities.

Although plaintiff's Complaint names individual defendants by way of reference to their positions with the City, and does not state expressly that plaintiff has brought an action against them personally in their individual capacities, (Defs. Mem. Supp.

10. Plaintiff also claims that although cost-cutting was the City's stated objective in eliminating his position, the City did not ensure that Witkowski was able to perform plaintiff's responsibilities adequately. (Pl. Mem. Opp. Summ. J. at 5.) He also states that the City hired an architect to work on the residential rehabilitation program for $50,000 after he was dismissed. (*Id.*) Both of these claims lack supporting evidence.

Summ. J. at 12; Defs. Reply Mem. Supp. Summ. J. at 3) we conclude that plaintiff's Complaint adequately names defendants in their personal capacities. The Second Circuit has rejected the "clear statement" approach to the pleading of § 1983 claims [11] and noting that "[w]e have traveled too far in the direction of modern pleading to return to the rigid pleading rules of the past," has held that "[i]n place of express pleading, we look to the totality of the complaint as well as the course of proceedings to determine whether the defendants were provided with sufficient notice of potential exposure to personal liability." *Yorktown Med. Lab., Inc. v. Perales,* 948 F.2d 84, 88–89 (2d Cir.1991) (concluding that the plaintiff's failure to plead expressly a personal capacity claim against the state social services commissioner did not cause his claims to be barred by the Eleventh Amendment because the plaintiff sought punitive damages, which are available only in individual capacity suits); *accord Rodriguez v. Phillips,* 66 F.3d 470, 482 (2d Cir.1995) ("Where, as here, doubt may exist as to whether an official is sued personally, in his official capacity or in both capacities, the course of proceedings ordinarily resolves the nature of the liability sought to be imposed.").

*Heideman v. Wirsing,* 840 F.Supp. 1285 (W.D.Wis.1992), *aff'd,* 7 F.3d 659 (7th Cir. 1993), is an especially instructive application of the Second Circuit's holding in *Yorktown Medical Laboratory. Heideman* was a § 1983 case wherein the plaintiff, a deputy sheriff, sued the county and the sheriff and claimed that he had been fired "in violation of his First Amendment right to express his political views." *Id.* at 1290. The District Court for the Western District of Wisconsin adopted a Magistrate Judge's Report and Recommendation that

followed the Second Circuit's decision in *Yorktown Medical Laboratory* and concluded that although the plaintiff's complaint made a general allegation that the defendant sheriff was "acting in his official capacity at all times pertinent to the complaint," the plaintiff's complaint also acknowledged that the sheriff was "not the final decision-maker," a factor that indicated that the sheriff "could not have been acting in his official capacity for any actions that led to his termination." *Id.* at 1294. The court also noted that the plaintiff sought punitive damages, which are available only from defendants named in their individual capacities, and that if the plaintiff had intended to file only an official capacity suit against the sheriff, it would have been unnecessary to name the county as a separate defendant. *See id.* Accordingly, the court concluded that, read in its entirety, the complaint adequately alleged a claim against the sheriff in his personal capacity. *Id.* at 1295.

Mindful that even when the plaintiff is represented by counsel, "complaints must be viewed broadly in the context of civil rights actions," *Stevens v. Dutchess County, N.Y.,* 445 F.Supp. 89, 91 (S.D.N.Y. 1977), we conclude that plaintiff's Complaint indicates his intention to sue the individual defendants in their personal capacities. For example, like the deputy sheriff in *Heideman,* plaintiff in the present case named the City and the individual defendants separately. 840 F.Supp. at 1294. Another similarity to *Heideman* is that defendant Wendell, named by plaintiff as his principal harasser (Complt.¶ 20), did not have the independent authority to terminate his employment. (Wendell Aff. ¶ 29.) Finally, we note that plaintiff, in the damages section of the Complaint, refers to individual defendants' "willful, wan-

---

**11.** *See, e.g., Wells v. Brown,* 891 F.2d 591, 591 (6th Cir.1989); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir.1989).

ton and deliberate misconduct" and asks for "special compensatory damages," in addition to other compensatory damage, costs and attorney's fees. We deem this "special" damages request tantamount to a punitive damages claim, which, as is well established, cannot be made against a municipality. *See, e.g., Yorktown Med. Lab.*, 948 F.2d at 88–89. Accordingly, we conclude that plaintiff's Complaint adequately puts individual defendants on notice that they are being sued in their personal capacities, as well as their official capacities.[12]

### B. *Merits of Official Capacity Claims*

■ Defendants next assert that plaintiff's official capacity claims and suit against the City should be dismissed because they do not allege a constitutional violation resulting from a municipal custom or policy. (Defs. Mem. Supp. Summ. J. at 12–13.) Plaintiff contends in response that the City acted with conscious disregard for and deliberate indifference to his right to be free of racial harassment, and thus may be liable under an inadequate training theory. (Pl. Mem. Opp. Summ. J. at 13–14.) Defendants, citing the City's anti-discrimination and harassment policy and complaint procedure, claim that plaintiff's inadequate training theory fails as a matter of law because plaintiff cannot prove that the City acted with "conscious disregard" or "deliberate indifference" to plaintiff's right to be free from racial discrimination and harassment. (Defs. Mem. Supp. Summ. J. at 14.)

■ Section 1983 applies to municipalities and other local government units. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "[a] municipality may not be held liable in an action under § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior.*" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). Nonetheless, a § 1983 claim may be brought against a municipality when a "policy or custom" of the municipality deprived the plaintiff of his constitutional rights. *See Zahra*, 48 F.3d at 680–81. To establish municipal liability, a plaintiff must show that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." *Id.* at 694. Furthermore, where, as here, there is a claim against an individual municipal employee in his official capacity, "there must be proof of such a custom or policy in order to permit recovery ... [because] such claims are tantamount to claims against the municipality itself." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993) (citing *Hafer v. Melo*, 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)). In cases in which a plaintiff does not claim that a municipality directly inflicted an injury, but nonetheless caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the munic-

---

**12.** Defendants rely on their unopposed Rule 56.1 statement in support of their contention that plaintiff has sued them in their official capacities only. (Defs. Reply Mem. Supp. Summ. J. at 4.) Specifically, defendants rely on the following statement: "At all times relevant hereto, Defendants Deputy Commissioner Wendell, Commissioner Ritchie and Mayor Idoni were acting in their official capacities as employees and/or officers of the City."

(Defs. Rule 56.1 Stmt. ¶ 1.) However, this self-serving and legally conclusory statement cannot be deemed to foreclose all claims against defendants in their personal capacities. *See, e.g., Archie Comic Publications, Inc. v. DeCarlo*, 258 F.Supp.2d 315, 318 (S.D.N.Y.2003) (reviewing Rule 56.1 statement and distinguishing between factual assertions and legal conclusions).

ipality is not held liable solely for the actions of its employee." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown,* 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

 The Supreme Court has held that a municipality will be liable for inadequate training or supervision of its employees "only where the failure to train amounts to deliberate indifference to the rights" of those with whom municipal employees will come into contact. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "Alternatively, where the municipality, in the face of an objectively obvious need for more or better training or supervision, fails to take action, a custom or policy may be inferred." *Fincher v. County of Westchester,* 979 F.Supp. 989, 1007 (S.D.N.Y. 1997). Indeed, "municipal policymakers may appropriately concentrate training and supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights."[13] *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992).

We conclude that the City and defendants in their official capacities did not act with deliberate indifference toward plaintiff's protected interests in being free from racial discrimination and harassment. There is no evidence that the City has a custom or policy of racial discrimination;

there is considerable evidence to the contrary. On August 21, 2000, the City issued an official policy against harassment and provided a complaint procedure. (Defs. Mem. Supp. Summ. J. at 14; Iarocci Aff., Ex. A.) The City distributed copies of the policy and procedure to all employees, including plaintiff. (Iarocci Aff. ¶¶ 4–6.) The policy states, inter alia, that "all employees have the right to work in an environment free from all forms of discrimination including harassment based upon sex, race, color, religion, national origin, age, disability and/or protected activity," and that it applies to "all employees and officials of the City." (*Id.,* Ex. A at 1–2.) The policy also provides a detailed explanation of conduct that constitutes racial harassment. (*Id.* at 4.) Significantly, plaintiff did not file a complaint in accordance with the procedure set forth in the policy statement. (Defs. Rule 56.1 Stmt. ¶¶ 31–32.) The presence of an anti-discrimination policy and grievance procedure, particularly one not invoked by a plaintiff, evinces strongly that a municipality has not acted with the requisite deliberate indifference. *See Ridley v. District of Columbia,* 945 F.Supp. 333, 340 (D.D.C.1996). Accordingly, the Court grants defendants' motion for summary judgment dismissing plaintiff's claims against the City and the individual defendants in their official capacities.[14]

---

**13.** The Second Circuit has set forth the following three-part test for determining when a municipality's failure to train or supervise rises to the level of "deliberate indifference": First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation.... Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees

mishandling the situation.... [Third], the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.
*Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992) (citations omitted).

**14.** Plaintiff contends that the racial discrimination under a pretext of budget reduction was the municipal policy or custom that served as the "moving force" for the termination of his employment. (Pl. Mem. Opp. Summ. J. at 13.) Plaintiff also contends that the City acted with deliberate indifference

## III. *Harassment Claims*

■ Defendants claim that plaintiff's harassment claim should be dismissed because the undisputed facts reveal that defendants' conduct did not create a racially discriminatory hostile work environment. (Defs. Mem. Supp. Summ. J. at 14.) Plaintiff contends in response that the defendants "conceal[ed] the discriminatory undertones of their harassment throughout the plaintiff's employment," but nevertheless belittled him by assigning him to menial work and setting unattainable employment goals for him. (Pl. Mem. Opp. Summ. J. at 15–16.)

■ In order to succeed on a claim for hostile work environment pursuant to 42 U.S.C. §§ 1981 and 1983,[15] the plaintiff must show that the workplace was so ridden with "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted). The plaintiff must also show that there is a specific basis for imputing the conduct to the employer. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *Torres v. Pisano*, 116 F.3d 625, 633 (2d Cir.1997). The same standards apply to both race-based and sex-based hostile environment claims. *See Richardson v. N.Y. State Dep't of Corr. Service*, 180 F.3d 426, 436 n. 2 (2d Cir.1999); *Torres*, 116 F.3d at 630.

■ The Supreme Court has provided guidance and established a non-exclusive list of factors that should be weighed when determining whether a workplace is permeated with discrimination. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. These factors include: (1) the frequency and severity of the conduct; (2) whether the conduct was physically threatening, humiliating or merely an offensive utterance; (3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on the employee's psychological well-being. *See id.* Although one encounter may constitute a hostile work environment, conduct that can be categorized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998); *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986). The hostility of a work environment is determined by the totality of the circumstances. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367.

■ We conclude that plaintiff has not proven the existence of a racially discriminatory hostile work environment in this case. Plaintiff admittedly does not even

---

with respect to the training and supervision of the individual defendants. (*Id.* at 14.) Plaintiff, however, does not point to any evidence in support of these conclusory statements. Finally, plaintiff claims that his dismissal was pretextual because his position was federally funded "and thus the City would not save funds on the position elimination as purported." (*Id.*) Plaintiff, however, again fails to offer evidence to counter defendants' claim that his position was eliminated because of the reduced federal CDBG that contributes to

the City's funding of the development department.

**15.** Employment discrimination claims brought pursuant to 42 U.S.C. §§ 1981 and 1983, including those alleging a hostile work environment, are evaluated under the same analytical framework as claims brought under Title VII. *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Sorlucco v. N.Y. City Police Dep't*, 888 F.2d 4, 7 (2d Cir.1989).

allege conduct of an overtly racial character by any of the defendants. (Pl. Mem. Opp. Summ. J. at 15.) The plaintiff has not cited, and our independent research has failed to yield, any case wherein race-based hostile work environment claims survived summary judgment in the absence of such conduct. Rather, the case law proves the opposite proposition, namely, that the absence of such conduct is a factual omission that is necessarily fatal to a race-based hostile work environment claim. *See, e.g., Dean v. Westchester County Dist. Attorney's Office*, 119 F.Supp.2d 424, 429 (S.D.N.Y.2000) (Conner, J.) (concluding that plaintiff must cite examples of discriminatory conduct; "the mere fact that plaintiff believes that her environment was abusive or her treatment unfair is not enough to constitute a claim for hostile work environment"). Indeed, race-based hostile work environment claims substantiated by far more compelling evidence of racism have nevertheless been held insufficient as a matter of law. *See, e.g., Richardson*, 180 F.3d at 438–40 (reversing district court's grant of summary judgment on plaintiff's first hostile work environment claim wherein there was evidence of frequent use of offensive racial epithets in prison *A,* but affirming district court's grant of summary judgment on second hostile work environment claim wherein evidence was confined to three isolated racial comments in prison *B* ); *Curtis v. Airborne Freight Corp.*, 87 F.Supp.2d 234, 250–51 (S.D.N.Y.2000) (concluding that two isolated racial slurs by ill-mannered supervisor are insufficient to create a hostile work environment); *Findlay v. Reynolds Metals Co.*, 82 F.Supp.2d 27, 39 (N.D.N.Y. 2000) (granting summary judgment on hostile work environment claim when allegations were that co-workers and management placed cones resembling Ku Klux Klan hats on plaintiff's car and yelled at him for work-related deficiencies). Moreover, we note that all development department employees, including Wendell, participated in the "menial" work complained of by plaintiff.[16] Accordingly, we grant defendants' motion for summary judgment on plaintiff's hostile work environment claim.[17]

## IV. *Conspiracy Claims*

 We next turn to defendants' contention that plaintiff's § 1983 conspiracy

---

16. Plaintiff also relies on the well established proposition that summary judgment must be granted with caution in the employment discrimination context because direct evidence of discriminatory animus is rare. (Pl. Mem. Opp. Summ. J. at 15.) *See, e.g., Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37–39 (2d Cir.1994). The Court is mindful of that proposition, but notes that it does not relieve plaintiff of the burden of producing evidence tending to prove a racially-based hostile work environment. *See Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir.2001) (" Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient."); *Dean*, 119 F.Supp.2d at 430 ("Title VII is not a remedy for all disgruntled employees who are members of a protected class.... Those who seek its protection must allege and prove their entitlement thereto." (citations omitted)).

17. Thus, we need not reach defendants' argument, based on the employer's affirmative defense articulated in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher*, 524 U.S. at 775, 118 S.Ct. 2275. (Defs. Mem. Supp. Summ. J. at 16–17.) That "defense comprises two necessary elements [that must be proven by a preponderance of the evidence in the absence of tangible adverse employment action, namely that]: (a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. 2257.

claim should be dismissed because, inter alia: (1) it is inadequately pleaded; and (2) "to the extent that the conspiracy was between Wendell and any or all of the other named defendants," under the single entity rule, it must fail as a matter of law because the requisite agreement cannot exist between employees of the same governmental entity. (Defs. Mem. Supp. Summ. J. at 17–18.) Plaintiff claims in response that: (1) his pleading is sufficient under the standard set forth by *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); and (2) the single entity rule applies to businesses, but not employees of the same government agencies. (Pl. Mem. Opp. Summ. J. at 17–18.)

 To survive a motion to dismiss, a § 1983 conspiracy claim must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999); *accord Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir.2002). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.' " *Ciambriello*, 292 F.3d at 325 (quoting *Dwares*, 985 F.2d at 100). The requisite specificity requires that the plaintiff "make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.' " *Dwares*, 985 F.2d at 100 (quoting 2A MOORE'S FEDERAL PRACTICE ¶ 8.17[6], at 8–109 to 8–110 (2d ed.1992)).[18]

In the present case, the only mention of conspiracy in the entire Complaint is found in paragraph 20, which alleges in relevant part that:

> Defendants Michael Ritchie, Mayor Timothy [Idoni], and the City of New Rochelle knowingly, recklessly, or with deliberate indifference and callous disregard of plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis defendant Lewis Wendell, to refrain from: ... (2) conspiring to violate the rights privileges, and immunities guaranteed by the Constitution and laws of the United States and the laws of the State of New York
> ....

As defendants point out correctly, this conspiracy reference does not refer to an agreement or state with whom Wendell is alleged to have conspired or how the agreement to conspire was reached. (Defs. Mem. Supp. Summ. J. at 18–19.) Thus, plaintiff's conspiracy claim is facially insufficient because it fails to "provide some details of time and place and the alleged effect of the conspiracy." *Dwares*,

---

**18.** We note that a recent Southern District decision questions the continuing validity of the Second Circuit's *Ciambriello/Pangburn* standard in light of the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), wherein the Supreme Court held that the Rule 8(a) simplified notice pleading standard applies, with limited exceptions, to all actions including those for employment discrimination. *See Bullard v. City of New York*, 240 F.Supp.2d 292, 301–02 (S.D.N.Y.2003). Our ultimate disposition of plaintiff's conspiracy claim, however, does not rest on the sufficiency of his pleading as we ultimately accept plaintiff's averments and conclude that they are insufficient as a matter of law. Accordingly, the present case provides no occasion for this Court to resolve the apparent tension between the pleading standards set forth in *Ciambriello/Pangburn* and *Swierkiewicz*.

985 F.2d at 100 (internal quotation marks omitted) (concluding that conspiracy complaint was not facially insufficient where it "alleged that defendant [police] officers told the 'skinheads' that the officers would permit the 'skinheads' to assault the demonstrators; that one of the 'skinheads' informed a *Village Voice* reporter of the verbal license given by the officers; that the 'skinheads' did assault [the plaintiff], a demonstrator, in the presence of the officers; and that the officers present refrained from interfering with the assault and did not arrest the 'skinheads' ").[19]

▮▮▮ Plaintiff claims in his memorandum of law that he has alleged that "Wendell conspired with Ritchie, Mayor Idoni and the City in an attempt to force plaintiff into quitting his job" by harassing him. (Pl. Mem. Opp. Summ. J. at 17.) Even the Court's most liberal reading of plaintiff's Complaint, however, fails to discern this allegation anywhere in the Complaint. Nevertheless, even if the Court accepts plaintiff's reading as correct, his claim still must fail as a matter of law. It is well established that " [w]here the individual defendants are all employees of the institutional defendant, a claim of conspira-cy will not stand.' " *Nat'l Congress for Puerto Rican Rights v. City of New York,* 75 F.Supp.2d 154, 168–69 (S.D.N.Y.1999) (quoting *Burrell v. City Univ. of New York,* 995 F.Supp. 398, 414 (S.D.N.Y. 1998)); *see also Ritzie v. City Univ. of New York,* 703 F.Supp. 271, 277–78 (S.D.N.Y.1989) (dismissing conspiracy claim when individual defendants were all employees of institutional defendant university). For example, in *National Congress for Puerto Rican Rights,* the court dismissed the plaintiffs' conspiracy claim, without leave to amend, when all of the alleged co-conspirators were employees of New York City, and except for the Mayor, were members of the city police department. 75 F.Supp.2d at 168. Although plaintiff claims that this rule only applies to single business entities, and not single governmental entities, he does not cite any authority in support of his contention, and the Court's independent research fails to yield any. (Pl. Mem. Opp. Summ. J. at 17–18.) Thus, we decline to depart from this well established line of case law and we conclude that plaintiff's claim fails as a matter of law. Accordingly, we dismiss plaintiff's conspiracy claim, and we deny him, as futile, leave to replead.[20]

**19.** Plaintiff claims that his pleading is adequate under the standard set forth in *Leatherman,* which rejected a "heightened pleading" standard in civil rights cases. 507 U.S. at 168, 113 S.Ct. 1160. (Pl. Mem. Opp. Summ. J. at 18.) Indeed, in *Leatherman,* the Supreme Court reaffirmed the pleading standard set forth in *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which provided that "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." 507 U.S. at 168, 113 S.Ct. 1160 (internal quotation marks omitted). Nevertheless, as both parties agree in their memoranda, post-*Leatherman* case law in the Second Circuit still requires a plaintiff plead-ing a § 1983 conspiracy claim to allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn,* 200 F.3d at 72; *accord Ciambriello,* 292 F.3d at 324–25. *But see Bullard,* 240 F.Supp.2d at 301–02; *see also supra* note 18.

**20.** In *Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir.2002), the Second Circuit stated that:

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to

## V. *Racial Discrimination Claims*

 We next turn to defendants' contention that the Court should grant summary judgment in their favor on plaintiff's claims of racial discrimination and profiling because plaintiff has failed to establish a prima facie case of discrimination. (Defs. Mem. Supp. Summ. J. at 22.) Specifically, defendants claim that plaintiff cannot establish a prima facie case of discrimination because he was not discharged under circumstances giving rise to an inference of discrimination because a Caucasian woman was terminated simultaneously with plaintiff, and neither of their positions was filled by new employees. (*Id.* at 24.) Defendants also contend that plaintiff has not introduced evidence tending to prove that their legitimate non-discriminatory reason for terminating plaintiff, namely budget reduction, was a pretext for racial discrimination. (*Id.* at 26–28.) Plaintiff contends otherwise.[21] (Pl. Mem. Opp. Summ. J. at 21–22.)

We analyze plaintiff's claim of employment discrimination brought pursuant to 42 U.S.C. §§ 1981 and 1983 under the same framework as claims brought under Title VII. *See supra* note 15. Under Title VII, a claim for employment discrimination is governed by the three-step burden shifting analysis of *McDonnell Douglas Corp.*

*v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dean,* 119 F.Supp.2d at 430. Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and nondiscriminatory reason" for its actions. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 To establish a prima facie case of discrimination, a plaintiff must establish that: (1) he or she is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination. *See Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001). The burden to

---

amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam). One appropriate basis for denying leave to amend is that the proposed amendment is futile. *Nettis v. Levitt,* 241 F.3d 186, 193 (2d Cir.2001); *see also Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002). *See also Nat'l Congress for Puerto Rican Rights,* 75 F.Supp.2d at 169.

**21.** Defendants contend that no cause of action involving racial profiling exists for employment discrimination, and that plaintiff's claim of racial profiling should be dismissed. (Defs. Mem. Supp. Summ. J. at 23; Complt. ¶ 4.) Plaintiff does not respond to this contention in his memorandum. Accordingly, we consider the claim abandoned because "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.2003).

establish a prima facie case is *de minimis.* *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995). Nonetheless, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *See Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 246 (S.D.N.Y.2001).

With respect to plaintiff's prima facie case, the parties do not dispute that plaintiff satisfied the first three elements because he is African–American, he was qualified for the eliminated position, and his employment was terminated. (Defs. Mem. Supp. Summ. J. at 24.) We thus turn to the fourth element of the plaintiff's prima facie case, namely whether the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination. Defendants claim that plaintiff's termination did not occur under circumstances giving rise to an inference of discrimination because a Caucasian woman was terminated simultaneously with plaintiff, and neither of their positions was filled by a new employee. (*Id.*)

We begin with the proposition that, in the Second Circuit, the fact that a plaintiff was either not replaced by someone outside of his or her protected class, or not even replaced at all, "may weaken, but certainly does not eliminate, the inference of discrimination." *Meiri v. Dacon,* 759 F.2d 989, 996 (2d Cir.) (concluding that the plaintiff proved prima facie case of religious discrimination when employer sought replacements after discharging her, even though her position was subsequently eliminated), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *accord Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 105 (2d Cir.1989) (holding that an age discrimination plaintiff "need not show that he was replaced by a younger, newly hired employee; it is sufficient

that the discharge occur in circumstances giving rise to an inference of age discrimination"). Case law post-*Meiri* and *Montana,* however, has demonstrated that this proposition does not relieve a plaintiff from his or her burden of proffering direct, circumstantial or statistical evidence that shows the existence of circumstances supporting an inference of unlawful discrimination. *Compare Montana,* 869 F.2d at 104–05 (concluding that circumstances of discharge gave rise to inference of discrimination when 56 year old plaintiff's position was eliminated and her responsibilities were not eliminated as well, but rather transferred to an already overworked 26 year old co-worker and a newly hired 26 year old employee), *and Elliott v. British Tourist Auth.,* 172 F.Supp.2d 395, 401 (S.D.N.Y.2001) (concluding that the plaintiff established a prima facie case of age discrimination when he was the "sole employee terminated in 1996 due to budget cuts"), *and Sava v. Gen. Elec. Co.,* 877 F.Supp. 81, 83–84 (D.Conn.1995) (concluding that the plaintiff established a prima facie case of sex discrimination when she was only employee in her division who was laid off after a restructuring, but male employees in the same division were transferred to different departments or positions), *and Thermidor v. Beth Israel Med. Ctr.,* 683 F.Supp. 403, 409–10 (S.D.N.Y. 1988) (concluding that the plaintiff established a prima facie case when plaintiff's position was eliminated after his discharge, but the plaintiff offered direct evidence of remarks by supervisor referring to plaintiff's race), *with McKnight v. Graphic Controls Corp.,* No. 98–CV–0662E(H), 2000 WL 1887824, at *6 (W.D.N.Y. Dec. 11, 2000) (concluding that there was no evidence supporting an inference of discrimination when restructuring that led to the elimination of the African–American plaintiff's position also led to the elimination of the position of his supervisor, a white

male), *and Berkowitz v. County of Orange,* 120 F.Supp.2d 386, 398–99 (S.D.N.Y.2000) (Conner, J.) (holding that plaintiff failed to establish a prima facie case of religious discrimination when his position had a very light workload and was discontinued after his termination), *and Barth v. CBIS Fed., Inc.,* 849 F.Supp. 864, 869–70 (E.D.N.Y.) (concluding that plaintiff did not establish a prima facie case of age discrimination when no one was hired to replace her and employees who picked up her remaining work were within five years of her age), *aff'd,* 43 F.3d 1458 (2d Cir. 1994).

In light of these precedents, we conclude that plaintiff has not established a prima facie case because he was not discharged under circumstances that give rise to an inference of discrimination. We note particularly that plaintiff received the same six months' advance notice of impending termination as the salaried white female project manager, who also was discharged. Indeed, as defendants point out, both positions remain unfilled and the union has not grieved their elimination; winding down tasks were assigned to an independent contractor who was less costly than a City employee.[22] (Defs. Mem. Supp. Summ. J. at 24.) Moreover, these discharges oc-

curred amidst severe budget cuts for the City as both tax and federal CDBG revenues declined. Accordingly, we remain guided by the proposition that the civil rights laws are not "a remedy for all disgruntled employees who are members of a protected class.... Those who seek its protection must allege and prove their entitlement thereto." *Dean,* 119 F.Supp.2d at 430 (citations omitted). We conclude that plaintiff has not shown that he was discharged under circumstances that give rise to an inference of discrimination and has therefore not made out a prima facie case on the claim of discrimination. We, accordingly, grant defendants' motion for summary judgment with respect to plaintiff's claims of racial discrimination and profiling.[23]

## VI. *Plaintiff's Remaining Claim*

 Defendants next contend that plaintiff's remaining claim, which is that defendants Idoni, Ritchie and the City "failed to instruct, supervise, control and discipline on a continuing basis Defendant, Lewis Wendell, to refrain from ... (4) otherwise depriving Plaintiff of his constitutional and statutory rights, privileges and immunities," should be dismissed for

22. The parties dispute whether plaintiff was "replaced" in light of Witkowski's status as an independent contractor. (Defs. Mem. Supp. Summ. J. at 24; Pl. Mem. Opp. Summ. J. at 21.) As an employment discrimination plaintiff need not prove replacement, Witkowski's independent contractor status does not preclude plaintiff from establishing a prima facie case. *Cf. Williams v. 55th St. Theatre Found., Inc.,* No. 93 Civ. 3385, 1994 WL 501760, at *5 (S.D.N.Y. Sept. 12, 1994) (concluding in age discrimination case that the fact that the plaintiff's duties were given to an independent contractor does not preclude the plaintiff from raising an inference of age discrimination).

23. In response to defendants' contentions, plaintiff reiterates his hostile work environ-

ment allegations, and then contends that he was replaced by a white individual who was hired to perform his duties. (Pl. Mem. Supp. Summ. J. at 21.) As noted previously, the undisputed facts indicate that Witkowski, the woman hired to complete his remaining tasks, is an independent contractor who is much less costly than a City employee. Accordingly, plaintiff was not actually replaced as an employee. Although plaintiff can establish a prima facie case of racial discrimination without proving replacement, *see supra* note 22, the economic effects of hiring Witkowski lend further support to the defendants' argument that plaintiff was not discharged under circumstances that give rise to an inference of discrimination. Accordingly, we grant defendants' motion for summary judgment on plaintiff's racial discrimination claim.

failure to state a claim because it does not provide basic notice of the cause of action asserted and defendants' conduct that give rise to it. (Defs. Mem. Supp. Summ. J. at 28, citing Complt. ¶ 20.) Plaintiff contends in response that defendants have notice of the claims against them and that defendants are attempting to establish a heightened pleading standard in violation of *Leatherman*, which rejected a "heightened pleading" standard in civil rights cases. 507 U.S. at 168, 113 S.Ct. 1160. (Pl. Mem. Opp. Summ. J. at 22–23.) We agree with defendants.

In *Leatherman*, the Supreme Court reaffirmed the pleading standard set forth in *Conley*, which provided that "[t]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160 (internal quotation marks omitted). We agree with defendants and conclude that in comparison to the other allegations in that count of plaintiff's Complaint, which allege that Wendell engaged in specific acts of harassment, conspiracy and "racial profiling and/or discrimination," (Complt.¶ 20) the "otherwise deprive" claim is too vague to provide defendants with the requisite fair notice of the acts alleged to have been committed by Wendell. Accordingly, we dismiss that claim pursuant to Rule 12(b)(6), without leave to replead in light of the claim's vagueness and lack of apparent support. *See, e.g., Bloom v. United States*, No. 02 Civ. 2352, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) ("a court may dismiss without leave to amend when ... 'substance of the claim pleaded is frivolous on its face.' A claim is frivolous when it is vague and incomprehensible ...." (citations omitted)).

## CONCLUSION

For all of the foregoing reasons, the Court denies defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(5) for insufficiency of service of process, but grants defendants' motion for summary judgment dismissing plaintiff's Complaint in its entirety, without leave to replead.

SO ORDERED.